IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**ANTHONY JOSEPH PETERS**                                                  **PLAINTIFF**

**v.**                                                  **CIVIL ACTION NO. 1:13-cv-541-KS-MTP**

**DR. RON WOODALL and**
**WEXFORD HEALTH**                                                  **DEFENDANTS**

## REPORT AND RECOMMENDATIONS

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment [47]. Having considered the Motion [47], the record, and the applicable law, the undersigned recommends that the Motion [47] be granted and this action be dismissed with prejudice.

### BACKGROUND

On July 23, 2013, Plaintiff Anthony Joseph Peters, proceeding *pro se* and *in forma pauperis*, filed his complaint pursuant to 42 U.S.C. § 1983. The allegations in Plaintiff's complaint occurred while he was a post-conviction inmate at South Mississippi Correctional Institution ("SMCI") in Leakesville, Mississippi, where he is currently incarcerated. In his complaint and as clarified in his testimony at the *Spears*[1] hearing, Plaintiff asserts claims against Dr. Ron Woodall and Wexford Health for the denial of adequate medical treatment.

According to Plaintiff, around 2010, he developed a rash on his neck which spread to the area around his eyes. Dr. McCleave, an employee of Wexford Health, treated the rash and prescribed several different medications, but the rash persisted. Sometime in 2012, Dr. McCleave allegedly referred Plaintiff to a dermatologist, and Plaintiff was transferred to Central

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

Mississippi Correctional Facility ("CMCF") in Pearl, Mississippi, in order to receive treatment. According to Plaintiff, while at CMCF, he was treated by an ophthalmologist, Dr. Bear, but did not see a dermatologist. Dr. Bear treated Plaintiff on multiple occasions and prescribed him antibiotics and a medicated cream.

After Plaintiff returned to SMCI, he informed Dr. McCleave that he had not seen a dermatologist. Thereafter, Plaintiff was sent to a dermatologist in Hattiesburg, Mississippi. According to Plaintiff, the dermatologist prescribed medications that Dr. McCleave had previously prescribed, and the medications did not help his rash.

Plaintiff alleges that Defendant Dr. Ron Woodall was aware of his condition and, as the medical director, should have ordered that Plaintiff see a dermatologist earlier. Plaintiff also claims that Dr. Woodall should have ordered a second appointment with a dermatologist because the medications prescribed at the first appointment did not help his rash. Additionally, Plaintiff alleges that on one occasion he attempted to see Dr. Woodall, but Dr. Woodall referred him to Dr. McCleave because Dr. McCleave had previously treated Plaintiff's rash.

Finally, Plaintiff alleges that at some point Dr. McCleave prescribed medicated ointment and shampoo for Plaintiff which helped with the itching, but Dr. Woodall refused to refill the ointment and shampoo.[2] According to Plaintiff, Dr. Woodall stated that Wexford Health would no longer allow him to prescribe the ointment or shampoo. Instead, Dr. Woodall prescribed shots for the itching.

As relief, Plaintiff seeks compensatory damages for pain and suffering and punitive

---

[2] In a Motion for Production of Documents [37], Plaintiff identified the ointment and shampoo as petroleum jelly, A&D ointment, and T-Gel shampoo.

damages. Plaintiff also seeks injunctive relief in the form of an order directing Defendant to again send him to a dermatologist.

## STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment will be granted only when "the record indicates that there is 'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The Court must view "the evidence in the light most favorable to the nonmoving party." *Id.* However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## ANALYSIS

Plaintiff's allegations amount to claims against Defendants for violations of the Eighth Amendment. "Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. App'x 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d

752, 756 (5th Cir. 2001)).  The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A plaintiff must show that a defendant's "response indicate[d] that the [defendant] subjectively intended that harm occur." *Thompson v. Upshur County*, 245 F.3d 447, 458-59 (5th Cir. 2001).

An official is not deliberately indifferent unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Id*. at 838.  Plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson*, 91 Fed. App'x at 965 (quoting *Domino*, 239 F.3d at 756). "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm."  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986).  Plaintiff is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006).  Further, a prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

In support of their Motion for Summary Judgment [47], Defendants Dr. Woodall and Wexford Health submitted an affidavit from Dr. Woodall, a transcript of the *Spears* hearing, a response to the Court regarding medications, and Plaintiff's medical records.  Plaintiff's medical

records demonstrate that, on October 11, 2009, medical professionals began treating Plaintiff for a rash around his eyes by providing him tolnaftate, an anti-fungal cream. (Medical Records [50] at 781-82.)  Throughout 2009, nurses continued treating Plaintiff's rash. ([50] at 791-92; 804-05.)

On January 19, 2011, Plaintiff again began complaining about a rash on his face, and he was provided an antibiotic ointment and hydrocortisone cream. ([50] at 1058-59.)  On February 17, 2011, Dr. McCleave prescribed Plaintiff antibiotics. ([50] at 1079-84.)  In March, 2011, a nurse provided Plaintiff hydrocortisone cream, and Dr. McCleave prescribed a corticosteroid and took a biopsy of the affected area. ([50] at 1104-07.)  For the remainder of 2011, Plaintiff received regular treatment for his rash.[3]  For example, in May, Plaintiff was provided Lidex ointment and an antihistamine; in September, Dr. McCleave prescribed him therapeutic shampoo and antibiotic ointment; and in December, Dr. Woodall prescribe him amoxicillin. ([50] at 1152-55; 1246; 1296-97.)

In January, 2012, Plaintiff reported the his rash was "flaring up again," and he was provided an antibiotic, a corticosteroid, and an antibacterial ointment. ([50] at 1339-40; 1342-46.)  In February, 2012, Plaintiff informed Dr. McCleave that one of the medications used to treat allergic reactions, cyproheptadine, improved his rash but the rash worsened after the medication ran out, so Dr. McCleave prescribed him more of that particular medication. ([50] at 1339-40; 1342-46.)  Dr. McCleave also requested a specialty consult with a dermatologist for Plaintiff. ([50] at 1387.)  Thereafter, a doctor who apparently works for the Mississippi

---

[3] *See*, *e.g.*, [50] at 1141-42; 1152-55; 1207-08; 1222-23; 1231-32; 1235-36; 1246; 1250-51; 1268-69; 1292-93; 1296-97; 1304-05.

Department of Corrections[4] scheduled Plaintiff an appointment with an opthamologist. ([50] at 1389.)  In March, 2012, Plaintiff was transferred to CMCF and received treatment from an outside opthamologist, which included a prescription for a topical antibiotic (Metrogel) and an antifungal medication (Diflucan). ([50] at 1397; 1402-03.)

After Plaintiff was transferred back to SMCI in early 2013, he was provided multiple steroids and an antibiotic. ([50] at 1621-24.)  Medical professionals continued to provide Plaintiff regular treatment,[5] and on June 12, 2013, Dr. McCleave provided him A&D ointment and antibiotic ointment. ([50] at 1716-17.)  Plaintiff received regular treatment throughout 2013 and into 2014.[6]

On April 29, 2014, Dr. McCleave reevaluated Plaintiff's rash and provided Plaintiff A&D ointment, therapeutic shampoo, a steroid, and an anti-inflammatory drug. ([50] at 1972-73.)  On May 1, 2014, Dr. McCleave again requested a specialty consult with a dermatologist for Plaintiff. ([50] at 1979-80.)  On June 30, 2014, Plaintiff was seen by a dermatologist at Hattiesburg Clinic.  The dermatologist diagnosed Plaintiff with atopic dermatitis and advised Plaintiff that it "may continue to be chronic." ([50] at 611.)  The dermatologist prescribed a topical corticosteroid. ([50] at 611.)  Thereafter, medical professionals at SMCI continued to treat Plaintiff for his rash and continued to provide medications such as petroleum jelly, A&D ointment, and therapeutic shampoo.[7]

---

[4] *See* Affidavit of Dr. Woodall [47-2] at ¶ 9.

[5] *See*, *e.g.*, [50] at 1631; 1639; 1652; 1671-72; 1677-78; 1694-95.

[6] *See*, *e.g.*, [50] at 1727-28; 1734-35; 1757-58; 1792-93; 1820-21; 1849-50; 1896-1900; 1910-15; 1953.

[7] *See*, *e.g.*, [50] at 2073; 2089-90; 2114-15; 2131; 2135; 2136; 2175-76; 2231-32.

In order to succeed on his claims, Plaintiff must demonstrate that Defendants were deliberately indifferent to his serious medical needs. *See Davidson*, 91 Fed. App'x. at 964. Plaintiff has utterly failed to make this showing.  Based on the evidence before the Court, Dr. Woodall never refused to treat Plaintiff, ignored his complaints, or denied him medical treatment.     During the relevant time period, Plaintiff amassed an immense number of medical records concerning all manner of complaints.[8]  Regarding Plaintiff's rash, Dr. Woodall and other medical professionals at SMCI immediately assessed Plaintiff, consistently treated him, referred him to appointments with outside specialists, provided him multiple medications, and adjusted those medications when necessary.  The record clearly demonstrates that Dr. Woodall was not deliberately indifferent to Plaintiff's serious medical needs. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (holding that [m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmates' allegations of deliberate indifference.").

Plaintiff's claims amount to a disagreement over his course of treatment, but [d]isagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton*, 122 F.3d at 292.  Plaintiff has failed to present evidence demonstrating that he was provided inadequate medical care.  The record demonstrates that the medical professionals at SMCI provided Plaintiff continuous care for his chronic[9] condition. Additionally, the record demonstrates that when Plaintiff received treatment from an outside

---

[8] Plaintiff's medical records from 2009 to early 2015 exceed two thousand pages and cover complains regarding rashes, colds, coughs, sore throats, sinus congestion, neck pain, back pain, headaches, toe pain, swollen feet, ear infections, eye infections, styes, lightheadedness, dizziness, arthritis, jock itch, athlete's foot, heartburn, gas, muscle spasms, neuropathy, low blood sugar, and many other purported ailments.

[9] *See* [50] at 611.

7

dermatologist, such treatment did not differ from the treatment provided by SMCI. ([50] at 611; Transcript of *Spears* Hearing [47-4] at 9-10.)  Moreover, even if Dr. Woodall were negligent in his assessment and treatment of Plaintiff, such does not rise to the level of a constitutional violation. *See Daniels*, 474 U.S. at 333-34; *McMahon*, 583 F.2d at 174; and *Davidson*, 91 Fed. App'x. at 965 (citing *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999)).

Additionally, Plaintiff has made no showing that Wexford Health was deliberately indifferent to his serious medical condition. *See Davidson*, 91 Fed. App'x. At 964.  There is no supervisory or respondeat superior liability under Section 1983. *See Oliver v. Scott*, 276 F.3d 736, 742 & n.6 (5th Cir. 2002).  Accordingly, Wexford Health cannot be held responsible for Dr. Woodall's alleged improper medical treatment. *See Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987).

Plaintiff has failed to demonstrate that Wexford Health was independently involved in the alleged denial of adequate medical treatment, or that it implemented an unconstitutional policy that causally resulted in an injury to Plaintiff.  Moreover, the Court has determined that no medical professional at SMCI violated the Plaintiff's constitutional rights.  Therefore, Plaintiff has failed to establish a constitutional violation by Wexford Health.

The record clearly demonstrates that Defendants were not deliberately indifferent to Plaintiff medical needs, and Defendants are entitled to judgment as a matter of law.

## CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the undersigned recommends that:

1. Defendants' Motion for Summary Judgment [47] be GRANTED and
2. This action be dismissed with prejudice.

**NOTICE OF RIGHT TO OBJECT**

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 31st day of December, 2015.

s/ Michael T. Parker<br>United States Magistrate Judge